IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.     )<br>)<br>EMMANUEL C. NORMAN,     )<br> aka Marce Emmanel Dalyah,[1]   )<br>)<br>Defendant.     )<br>_____ ) | Criminal Case No.  4:11cr101 (RCY) |

**MEMORANDUM OPINION**

This matter is before the Court on Defendant's Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A) (ECF No. 39) ("Motion for Compassionate Release"), the Memorandum in Support (ECF No. 40), the Response in Opposition by the United States (ECF No. 44), the Reply filed by the Defendant (ECF No. 45), the Supplemental Reply (ECF No. 46), the exhibits related to these documents, and other related filings.  The Court has reviewed these documents and all exhibits, and the matter is ripe for disposition.  The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process.  For the reasons that follow, the Court will deny the Motion for Compassionate Release.

**I.  BACKGROUND**

Marce Emmanuel Dalyah ("the Defendant" or "Dalyah") was charged in a five-count indictment on November 9, 2011.  (ECF No. 3.)  The charges were as follows:  Count One, Conspiracy to Obstruct, Delay, and Affect Commerce by Robbery, in violation of 18 U.S.C.

---

[1] The Defendant changed his name in 2016, and the BOP records reflect his new name, Marce Emmanuel Dalyah. (ECF No. 40-1.)  The Court will refer to the Defendant using his new name.

§ 1951(a); Count Two, Obstruct, Delay, and Affect Commerce by Robbery, in violation of 18 U.S.C. §§ 1951(a) and 2; Count Three, Possess a Firearm in Furtherance of a Crime of Violence, in violation of 18 U.S.C. §§ 924(c) and 2; Count Four, Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1); and Count Five, False Personation of an Officer or Employee of the United States, in violation of 18 U.S.C. § 912. (*Id.*) On November 29, 2011, the Defendant appeared before United States District Judge Henry C. Morgan, Jr. and pled guilty to Counts Two, Three, and Five, by way of a plea agreement and a written statement of facts. (ECF Nos. 15–18.)

According to the Statement of Facts and Presentence Investigation Report ("PSR"), the Defendant and a co-conspirator robbed a Food Lion in Hampton, Virginia. (ECF Nos. 17, 21.) During the robbery, the Defendant used, possessed, and brandished a firearm, caused to be affixed to two Food Lion employees devices that he made them believe were explosives, and, following an altercation between Defendant's co-conspirator and a Food Lion vendor, the Defendant discharged a firearm, shooting the vendor. (ECF No. 17 at ¶¶ 5, 6, 8; ECF No. 21 at ¶¶ 5–24.)

With a total offense level of 29 and a criminal history category of IV, the Defendant's advisory Sentencing Guidelines range was 121 to 151 months, plus 120 months consecutive for Count Three. (ECF No. 21 at ¶¶ 93–95; Part D.) By statute, Count Three required a mandatory minimum sentence of 120 months that had to be served consecutively. (*Id.* at ¶ 95, Part D.) The Defendant was sentenced to 121 months on Count Two, 120 months on Count Three to be served consecutively to Count Two, and 36 months on Count Five to be served concurrently with Count Two, for a total term of imprisonment of 241 months. (ECF Nos. 25, 29.) His sentence was later reduced to 193 months. (ECF No. 34; ECF No. 44 at 2.)

In the Motion for Compassionate Release, Dalyah argues that he is at higher risk for severe illness from COVID-19 because he "has latent tuberculosis and other medical issues that substantially increase his risk of contracting COVID-19 and developing a severe illness as a result." (ECF No. 40 at 3–4.) Dalyah contracted tuberculosis while he was incarcerated at USP Atlanta. (*Id*. at 4.) He contends, based on several studies, that patients with latent tuberculosis have an increased risk of contracting COVID-19 and developing severe complications. (*Id*. at 4–5.) He also contends that "COVID-19 may have an aggravating effect on individuals with latent tuberculosis and result in their developing an active infection and acute tuberculosis disease." (*Id*. at 5.) Dalyah's other medical conditions include pre-diabetes, high blood pressure, and possible hepatitis. (*Id*. at 7–8.) He also contends that the BOP is not able to protect its population against COVID-19 and is not able to adequately care for those who contract COVID-19. (*Id*. at 8–11.) The Defendant also argues, in his Reply, that the Court should consider his "youth at the time of his offenses, his post-offense conduct and rehabilitation, and the substantial term of imprisonment he has already served," particularly under strict lockdown conditions. (ECF No. 45 at 2–3.) The Defendant seeks immediate compassionate release or, if the Court determines that immediate release is not warranted, then a sentence reduction. (ECF No. 40 at 11, 29; ECF No. 45 at 2–3.)

### II.  LEGAL STANDARD:  COMPASSIONATE RELEASE UNDER THE FIRST STEP ACT OF 2018

As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) authorizes courts to "reduce the term of imprisonment" of a defendant for "extraordinary and compelling reasons," "upon motion of the Director of the Bureau of Prisons," or "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of

Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A)(i).  Once the administrative remedies under § 3582(c)(1)(A) have been exhausted or waived, the Court may reduce or modify a sentence when "extraordinary and compelling reasons warrant such a reduction." *Id.*  Section 3582(c)(1)(A) also requires courts to consider "the factors set forth in section 3553(a) to the extent they are applicable" and "applicable policy statements issued by the [United States] Sentencing Commission" before granting a sentencing modification. *Id*.

It is settled that the burden is on the defendant to prove that extraordinary and compelling reasons exist for compassionate release under § 3582(c)(1)(A)(i). *White v. United States*, 378 F. Supp. 3d 784, 785 (W.D. Mo. 2019).  While courts do not "minimize the risks that COVID-19 poses in the federal prison system," the "mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).  It is also generally true that "chronic conditions that can be managed in prison are not a sufficient basis for compassionate release." *United States v. Molina*, No. 3:15cr31, 2021 WL 1323402, at *2 (E.D. Va. Apr. 8, 2021) (citation omitted).  "In assessing whether the record shows the existence of extraordinary and compelling reasons for compassionate release, courts consider, *inter alia*, the guidance of the CDC [Centers for Disease Control and Prevention], and non-binding policy statements of the United States Sentencing Guidelines." *Id.*  "[T]o constitute extraordinary and compelling reasons for compassionate release, medical conditions must be serious." *Id.*  To establish the existence of "extraordinary and compelling" reasons for

4

compassionate release because of COVID-19,[2] a defendant generally must show "both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *United States v. White*, No. 2:07cr150, 2020 WL 1906845, at *1 n.2 (E.D. Va. Apr. 17, 2020) (quoting *United States v. Feiling*, 453 F. Supp. 3d 832, 840 (E.D. Va. 2020)).

In *United States v. McCoy*, 981 F.3d 271, 276 (4th Cir. 2020), the Fourth Circuit held that "there currently exists no 'applicable policy statement'" because the Sentencing Commission has not issued a policy statement since the passage of the First Step Act. *Id.* at 281. Therefore, until the Sentencing Commission issues an updated policy statement, "district courts are 'empowered to consider any extraordinary and compelling reason for release that a defendant might raise.'" *Id.* at 284 (alteration omitted) (quoting *United States v. Brooker*, 976 F.3d 228, 230 (2d Cir. 2020)).

Although the policy statement in U.S.S.G. § 1B1.13 is no longer binding on this Court after the Fourth Circuit's decision in *McCoy*, many courts are treating § 1B1.13 "as providing useful guidance about how the Court should exercise its discretion under § 3582(c)(1)(A)," but they are not "treat[ing] its provisions as binding." *United States v. Dean*, No. 15-CR-0339(1), 2020 WL 7055349, at *1 (D. Minn. Dec. 2, 2020) (citing *McCoy*, 981 F.3d at 281); *see also United States v. Spencer*, No. 2:11cr30, 2021 WL 713287, at *2 (E.D. Va. Feb. 24, 2021) (noting that "the policy statement in U.S.S.G. § 1B1.13 is no longer binding . . . after . . . *McCoy*," but that "the court finds certain of its provisions useful in addressing [compassionate release motions]").

---

[2] According to his counsel, Dalyah, age 37, is at higher risk for severe illness from COVID-19 because he "has latent tuberculosis and other medical issues that substantially increase his risk of contracting COVID-19 and developing a severe illness as a result." (ECF No. 40 at 3–4.)

Section 1B1.13's guidance provides that a defendant's medical conditions, age, family circumstances, or other circumstances, either singly or in combination, can prove sufficiently extraordinary and compelling to justify compassionate release. U.S.S.G. § 1B1.13, application notes 1(A)-(D). It advises that, to be extraordinary and compelling, a defendant's medical conditions must be either "terminal . . . with an end of life trajectory" or must "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." § 1B1.13, application note 1(A).

Similarly, a defendant may be released based on his advanced age when he "is at least 65 years old," "is experiencing a serious deterioration in physical or mental health because of the aging process," and "has served at least 10 years or 75 percent of his or her term of imprisonment." § 1B1.13, application note 1(B). Defendants may also seek compassionate release based on family circumstances, including when the caregiver of a defendant's minor child has died or become incapacitated, or when the defendant's spouse or partner has become incapacitated and the defendant constitutes the only available caregiver. § 1B1.13, cmt. application note 1(C). Finally, the Sentencing Guidelines contemplate situations in which "there exists in the defendant's case an extraordinary and compelling reason [for compassionate release] other than, or in combination with, [the defendant's medical conditions, age, and family circumstances]." § 1B1.13, cmt. application note 1(D).

Even if extraordinary and compelling reasons exist for a reduction in sentence, § 3582(c)(1)(A) requires courts to consider "the factors set forth in section 3553(a) [of Title 18] to the extent they are applicable" and "applicable policy statements issued by the [United States] Sentencing Commission" before granting a sentence modification. To that end, § 3553(a)

requires courts to consider, among other factors, the nature and circumstances of the underlying offense and the history and characteristics of the defendant, as well as the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence and protect the public from further crimes of the defendant. 18 U.S.C. § 3353(a)(1)-(2).

The Fourth Circuit provided additional guidance in *United States v. Kibble*, 992 F.3d 326 (4th Cir. 2021). It explained that the district court must "reconsider[] the § 3553(a) factors in view of the extraordinary and compelling circumstances present in [the defendant's] case." *Id*. at 332. In his concurring opinion, Chief Judge Gregory makes it even more clear that the district court may not "fulfill its duty to reconsider the § 3553(a) factors by merely recounting the considerations that supported the original sentence." *Id*. at 335 (Gregory, C.J., concurring). "Section 3582(c)(1) necessarily envisions that the § 3553(a) factors may balance differently upon a motion for compassionate release than they did at the initial sentencing." *Id*. "If a district court's original § 3553(a) analysis could always prove that a sentence reduction would intolerably undermine the § 3553(a) factors, then 18 U.S.C. § 3582(c)(1) would, in effect, be a nullity." *Id*. Judge Gregory notes that "[a] day in prison under the current conditions is a qualitatively different type of punishment than one day in prison used to be," and that "[t]hese conditions, not contemplated by the original sentencing court, undoubtedly increase a prison sentence's punitive effect." *Id*. at 336.

Courts must also consider "evidence of rehabilitation and other post-conviction conduct." *United States v. Brown*, No. 3:90cr113, 2021 WL 3206548, *2 (E.D. Va. 2021) (citing *United States v. Martin*, 916 F.3d 389, 397–98 (4th Cir. 2019) (requiring consideration of post-conviction evidence and statutory sentencing factors in the context of a sentence reduction

sought pursuant to § 3582(c)(2)); *United States v. McDonald*, 986 F.3d 402, 412 (4th Cir. 2021) (extending *Martin* to motions filed pursuant to § 3582(c)(1)(B))). The *Brown* decision also notes that a defendant's "rehabilitation alone does not provide sufficient grounds to warrant a sentence modification." *Id*. (citing 28 U.S.C. § 994(t)).

Additionally, the Sentencing Commission has advised courts to consider whether, based on the factors set forth in 18 U.S.C. § 3142(g), a defendant would present a danger to the safety of any other person or to the community if released.[3] U.S.S.G. § 1B1.13(2). As noted herein, pursuant to *United States v. McCoy*, the policy statement is not binding, but it provides useful guidance.

Ultimately, the Court may reduce a defendant's sentence under § 3582(c)(1)(A) only after (1) the defendant establishes an extraordinary and compelling reason for the reduction, and (2) the Court finds that a reduction in the defendant's sentence would not undermine the relevant § 3553(a) factors and any applicable policy statements issued by the Sentencing Commission.

## III. ANALYSIS

The parties agree that Dalyah has satisfied the exhaustion requirement with regard to latent tuberculosis, but the United States contends that Dalyah has not satisfied the requirement for the other medical conditions raised herein. Despite that failure, the Court has considered all of Dalyah's medical conditions and arguments raised in the memoranda filed by his counsel.

---

[3] As modified in the context of a compassionate release motion, before releasing a defendant, courts should consider: (1) the nature and circumstances of the offense of conviction, including whether the offense is a crime of violence, a violation of § 1591, a terrorism offense, or an offense involving a minor victim, controlled substance, firearm, explosive or destructive device; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including his or her character, physical and mental condition, family and community ties, financial resources, history of substance abuse and criminal history, as well as whether at the time of the instant offense, the defendant was on a period of probation, parole or other form of release; and, (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g)(1)-(4).

After a careful review of the motion, memoranda, exhibits, and other related documents, the Court concludes that Dalyah's health conditions and other arguments do not support a finding of extraordinary and compelling reasons for a reduction in his sentence.

The medical records indicate that Dalyah has latent tuberculosis, pre-diabetes, high blood pressure on some occasions, and some "indeterminate lab results for hepatitis," but the records also indicate that his medical conditions are well-managed. (ECF Nos. 40 at 19, 40-3, 40-4, 40-5, 40-6, 40-7.) The United States notes that a review of Dalyah's medical records "found no chronic medical conditions requiring medication, treatment, or Chronic Care Clinic." (ECF No. 44 at 13, citing Ex. B.) The CDC provides guidance regarding certain medical conditions and distinguishes between individuals with certain conditions who "*are more likely* to get severely ill from COVID-19" and those whose conditions "*can make you more likely* to get severely ill from COVID-19." *See* People with Certain Medical Conditions | CDC (Updated Oct. 14, 2021). According to the CDC, "[h]aving tuberculosis can make you more likely to get severely ill from COVID-19." (*Id*.) The CDC notes that "[h]aving either type 1 or type 2 diabetes can make you more likely to get severely ill from COVID-19," but this does not include pre-diabetes. (*Id*.) The CDC also notes that "possibly high blood pressure (hypertension) can make you more likely to get severely ill from COVID-19." (*Id*.) The Defendant cites several cases where the inmates who have latent tuberculosis were granted compassionate release. (*See* ECF No. 40 at 18–21.) But where a defendant is receiving medical treatment to manage his medical conditions, courts have found that these conditions do not establish a particularized susceptibility to COVID-19. *See United States v. Reid*, No. 2:02cr172, 2020 WL 7318266, at *2 (E.D. Va. Dec. 10, 2020) (hypertension being treated so defendant not "particularly susceptible to COVID-19"); *Barrett v. United States*, No. 4:15cr47, 2020 WL 6206008, at *3 (E.D. Va. Oct. 22, 2020) (hypertension

9

and pre-diabetes combined with defendant's age and medical treatment to manage his medical conditions do not place him at increased risk, especially since the CDC does not recognize pre-diabetes as an underlying condition that increases risk); *McKenith v. United States*, No. 7:14cr26, 2021 WL 4527243, at *5 (E.D.N.C. Oct. 4, 2021) (compassionate release denied despite heart conditions and hypertension); *United States v. Volious*, 3:17cr575, 2020 WL 5988143, at *3 (D.S.C. Oct. 8, 2020) (compassionate release denied despite heart conditions, sleep apnea, and asthma); *United States v. Austin*, 825 F. App'x 324 (6th Cir. 2020) (affirming compassionate release denial despite inmate having heart conditions and being immunocompromised); *United States v. Taylor*, 3:19cr31, 2021 WL 244801, at *1 (W.D.N.C. Jan. 25, 2021) ("Tuberculosis is not among the known conditions which places an individual at an increased risk of severe illness from COVID-19."); *United States v. Williams*, 3:14cr44, 2021 WL 1823112 (E.D. Va. May 6, 2021) (compassionate release denied despite latent tuberculosis and hypertension); *Cabaase v. United States*, 2:10cr57, 2021 WL 2346106 (E.D. Va. June 8, 2021) (compassionate release denied despite fully vaccinated inmate also having latent tuberculosis).

   The medical records indicate that Dalyah is receiving on-going medical treatment for his medical conditions and that they are being well-managed. (ECF Nos. 40-3, 40-4, 40-5, 40-6, 40-7.) Thus, his medical conditions do not establish an extraordinary and compelling reason for compassionate release. In addition, according to the BOP, Dalyah was offered and refused the Pfizer vaccine on March 20, 2021 and again on April 6, 2021. The Court confirmed with the BOP that, as of October 12, 2021, there is no change regarding Dalyah's vaccine refusal status. With regard to his refusal of the Pfizer vaccine, although Dalyah has the right to decline vaccination, "he cannot simultaneously claim that he must be released because of the risk of complications while refusing a vaccine that could virtually eliminate that risk." *United States v.*

*Jackson*, No. 15cr260(7), 2021 WL 806366, at *2 (D. Minn. Mar. 3, 2021); *see also United States v. Williams*, No. CR-17-1279-1, 2021 WL 321904, at *3 (D. Ariz. Feb. 1, 2021) (finding that the defendant's refusal of the vaccine was "inconsistent with his position that he believes he is at increased risk from the virus.").

      Dalyah's counsel contends that Dalyah submitted a request for medical staff to discuss the vaccine with him, given his latent tuberculosis, and that this request had not been granted as of August 25, 2021. The Court agrees that the BOP medical staff should discuss the vaccine with Dalyah and answer his questions, and the Court will include such a recommendation in its order accompanying this opinion. A recent CDC "Dear Colleague Letter" noted, "Patients who have active TB disease or an illness that is being evaluated as active TB disease can receive a COVID-19 vaccine," but also noted that "the presence of a moderate or severe acute illness is a precaution to administration of all vaccines." [COVID mRNA vaccines, TST, and IGRA - Follow-up | Dear Colleague Letters | TB | CDC](#) (August 31, 2021). In another "Dear Colleague Letter," Dr. Walensky, CDC Director, noted the CDC's role with regard to fighting tuberculosis and COVID-19. [WTBD 2021 | Dear Colleague Letters | TB | CDC](#) (March 24, 2021). Other sources indicate that "TB patients should get COVID-19 vaccine as early as possible." *See* [Is it safe for TB patients to get COVID-19 vaccine? | TheHealthSite.com](#). Clearly, there is scientific data available to medical professionals with regard to the advisability of those with latent tuberculosis receiving a COVID-19 vaccine. Dalyah and the BOP medical staff at his current facility should take advantage of the expertise at the CDC and other agencies in making an informed decision regarding vaccination.

      Dalyah is currently housed at FCI Edgefield. There are currently no positive inmate cases and four positive staff cases at that facility; three inmates and no staff at that facility have

died of COVID-19; and there have been a total of 233 inmates and 33 staff members who tested positive and recovered, according to data available at www.bop.gov/coronavirus/ (updated daily at 3:00 p.m.) (last visited October 26, 2021). Given the availability of vaccines and the low number of positive cases there currently, Dalyah cannot establish a particularized risk of contracting COVID-19 at FCI Edgefield. Accordingly, the Court finds that Dalyah has not established an extraordinary and compelling reason for a reduction in his sentence.

Moreover, even if the Court found that Dalyah had established an extraordinary and compelling reason for a reduction in his sentence, the Court does not, in its discretion, find a reduction in sentence to be appropriate under the relevant § 3553(a) factors and non-binding policy statements. The Court finds that a reduction in Dalyah's sentence would undermine the relevant § 3553(a) factors. Dalyah's offenses involved a robbery during which he shot a Food Lion vendor during an altercation between Dalyah's co-conspirator and the vendor. Fortunately, the vendor was not killed, but the vendor did suffer permanent knee/joint damage. (PSR at ¶¶ 8–10.) Moreover, these offenses were committed while Dalyah was under two other criminal justice sentences and, although he was only 27 at the time of these offenses, his criminal history category was already a category IV. (*Id*. at 3, 47.) Dalyah has much community and family support, and the Court commends Dalyah for the positive steps he has taken while he has been incarcerated and is hopeful that Dalyah will continue on this path. (ECF Nos. 40-8 – 40-14.) The Court has also considered that Dalyah was young when he committed the instant offenses and that he has been incarcerated since November 20, 2011, almost ten years. But the Court must also note that he has been convicted of several charges while incarcerated, including as recently as December 2019. (ECF No. 43.)

The Court concludes that a reduction in Dalyah's sentence would undermine the need for the sentence to reflect the seriousness of the offenses, promote respect for the law, provide just punishment, and afford adequate deterrence, given the nature and circumstances of the underlying offenses, and Dalyah's history and characteristics.  Dalyah's current sentence is reasonable and appropriate, and it is no greater than necessary to achieve the objectives of 18 U.S.C. § 3553(a).

## IV.  CONCLUSION

For the reasons set forth herein, Dalyah's Motion for Compassionate Release will be denied.

An appropriate Order shall issue.

Richmond, Virginia
Date:  October 28, 2021

/s/
Roderick C. Young
United States District Judge